**Ex parte John VOKOLEK, Petitioner,**

**v.**

**William Kenneth CARNES, Sheriff, Jackson County, and James Bergfalk, Acting Director, Department of Corrections, Jackson County, Missouri, Respondents.**

**No. 58562.**

Supreme Court of Missouri, En Banc.

Aug. 1, 1974.

Henry L. Graf, Kansas City, for appellant.

Michael J. Maloney, Popham, Popham, Conway, Sweeny & Fremont, Kansas City, for respondents.

## ORIGINAL PROCEEDING IN HABEAS CORPUS

SEILER, Judge.

This is an original action in habeas corpus. Petitioner alleged he was being unlawfully restrained of his liberty by the director of Department of Corrections of Jackson County. We issued our writ, ordering respondent to make return of the time and cause of detention, and ordered petitioner admitted to bail in the meantime. For his return to the writ, the respondent exhibited the warrant of commitment issued by the circuit court committing petitioner to the county jail for a period of twenty days for indirect criminal contempt.

The warrant of commitment upon which the respondent relies, reads in its essentials, as follows: " . . . the said [petitioner] having this day been committed into your custody for two acts of indirect criminal contempt, to-wit: First, on October 31, 1973, the said John Vokolek did willfully aid and assist his wife . . . to hide . . . the minor children of [the wife and her former husband, Allen

B. Kipper, from the former husband] and . . . did also aid and assist her in refusing to turn the children over to [the former husband and the deputy sheriff accompanying him] and thereby interfered with legal process . . . after [petitioner] was aware of and understood the court order of October 31, 1973, ordering that the children be turned over to Mr. Kipper for return to Jackson County for further legal proceeding . . . and, second, on or after October 31, 1973, [petitioner] willfully aided [the wife] by active participation with her to remove and transport [the children] from the State of Missouri, thereby effectively removing the children beyond the reaches of this Court, contrary to the order of October 31, 1973, ordering that the children not be removed from the State of Missouri . . . "

The court order of October 31, 1973 referred to in the commitment was one which had been entered ex parte by the circuit court at Independence, earlier in the day of October 31, 1973, directed to Mrs. Vokolek (who was formerly Mrs. Kipper and who had custody of the children most of the time under earlier custody orders) to turn the children over to Mr. Kipper, so he could have them before the court the following morning for further inquiry into the circumstances of their custodial situation. Mrs. Vokolek was specifically ordered not to remove the children from the state. These emergency measures by the court were taken at Mr. Kipper's request when he learned from a private investigator at Joplin that the Vokoleks were reported to be moving to British Honduras the next morning and that there was a large van loaded with furniture parked in front of their Joplin residence.

Petitioner filed answer to the return, conceding that he was restrained under said warrant of commitment, but contending it was void, illegal, and erroneous for various reasons, one being that the warrant of commitment was faulty and wholly insufficient in that it contained no more than the legal conclusions of the committing court and that his imprisonment thereunder was therefore illegal.

◼ As is well known, in habeas corpus proceedings, the issues are framed by the pleadings—here the return and the answer, State ex rel. Burtrum v. Smith, 357 Mo. 134, 206 S.W.2d 558 (banc 1947)—so that the challenge to the warrant of commitment raised by the pleadings is one that must be considered at the outset. In our judgment, petitioner is correct in his contention and must therefore be discharged.

Sec. 476.140, RSMo 1969, V.A.M.S., provides that "Whenever any person shall be committed for any contempt specified in sections 476.010 to 476.310 [which include commitment for indirect criminal contempt], the particular circumstances of his offense shall be set forth in the order or warrant of commitment."

Sec. 532.410, RSMo 1969, V.A.M.S., dealing with habeas corpus, provides it shall be the duty of the court forthwith to remand the party, ". . . if it shall appear that he is detained in custody . . . (3) For any contempt, specially and plainly charged in the commitment, by some court . . . having authority to commit for a contempt so charged . . . "

◼ There is a long line of cases holding that these statutes, as well as the common law, require that the commitment set forth the facts and circumstances constituting the contempt and that failure to do so leaves the commitment insufficient and requires release of the petitioner.

In the case of Ex parte Miles, 406 S.W. 2d 107, 114 (Mo.App.1966), the court said: ". . . Our appellate courts have held consistently and repeatedly that, in contempt proceedings, the facts and circumstances constituting the contempt, and not mere legal conclusions, must be recited in the commitment, regardless of whether the contempt is direct . . . or, as here, is indirect . . . We must construe the commitment strictly in favor of the peti-

tioner, and no inferences, presumptions or intendments are permitted to be indulged against him in order to aid its recitals . . ."

In the Miles case the court held that the recital in the commitment that the contemnor procured one Sullivan to call a Mr. Wendleton and asked him to influence a juror Johnson who was sitting in a criminal trial then under way against the contemnor "is the merest legal conclusion and, in view of the decisions we have cited, cannot be regarded on any legal theory as a recital of facts and circumstances constituting a contemptuous procurement of Sullivan by petitioner . . ."

In Ex parte Fuller, 330 Mo. 371, 50 S.W.2d 654, 657 (banc 1932), the proposition is put this way: "In contempt cases, the facts and circumstances constituting the contempt should be recited in the judgment . . . In Ex parte Creasy, 243 Mo. 679, 704, 148 S.W. 914, 922 . . . we said: '. . . In contempt cases it is facts and circumstances which go to make up the contempt which must be set forth, and not the legal conclusions of the judge as to what are the facts and circumstances . . . 'The Constitution guards the liberty of the felon with the same eagle eye that it does the infant and pure girl. In each when unlawful detention is charged, the facts of that detention must be laid bare. In contempt proceedings which result in detention of one's liberty, the law says that the facts and circumstances of the contumacious acts must be spread of record in the commitment or order of commitment. Such was not done here, and petitioner's legal rights have been invaded . . .' "

In Reardon v. Frace, 344 Mo. 448, 126 S.W.2d 1167, 1168–69 (banc 1939), the court discussed the requirements of Sec. 476.140, supra (it was then Sec. 1867, RSMo 1929), as follows: " 'A commitment is a warrant, order, or process by which a court or magistrate directs a min-isterial officer to take a person to prison, or to detain him there . . .

" 'The commitment must therefore not only state the offense charged, but such facts as are essential to constitute the offense against the prisioner . . . '

". . .

"Thus it appears that the provision in Sec. 1867, which requires a statement of the particular circumstances in the warrant of commitment, is declaratory of the common law. In other words, the warrant of commitment in the instant case is void both under the common law and Sec. 1867 . . ."

In Ex parte Stone, 183 S.W. 1058, 1059 (Mo.1916), the court said: ". . . It is clear the commitment fails to set forth such 'particular circumstances' as show him to have been in contempt of the court. It has long been settled law that in a contempt proceeding of this kind 'presumptions and intendments will not be indulged in order to sustain a conviction for contempt of court' . . . and strict compliance with the statute must be exacted in cases such as this . . . [T]he guilt of contempt must appear from facts stated, not be shown by mere statements of conclusions and inferences . . ."

In Curtis v. Tozer, 374 S.W.2d 557, 574 (Mo.App.1964), the court said: ". . . The appellate courts of this state have repeatedly held that the facts and circumstances constituting the offense, and not simply the legal conclusions of the court, must be recited not only in the judgment but also in the commitment regardless of whether the contempt arose out of conduct or action before the court or outside of its presence . . ."

In G——— v. Souder, 305 S.W.2d 883, 887 (Mo.App.1957), the court held a commitment in contempt insufficient, saying: "Furthermore, in a contempt case the facts and circumstances constituting the

offense, and not simply the legal conclusions of the court, should be recited in the judgment and likewise in the commitment. In sweeping generalities, Mary was adjudicated 'guilty of contributing to the neglect of children who are wards of the Juvenile Court of Douglas County' and was committed under a 'capias execution' reciting only that she 'was convicted of the offense of contempt of court.' Under the authorities cited, both the judgment and the commitment were insufficient for failure to set forth the facts and circumstances constituting the alleged contempt."

In the case of In re Randolph, 474 S.W.2d 36 (Mo.App.1971), the commitment was held insufficient and the petitioner ordered discharged. In discussing the statutes concerning contempt and habeas corpus proceedings, the court said: " . . . The clear intendment of these statutes is that 'the contempt for which the prisoner is withheld is to be pointedly charged and set forth in the commitment'. Ex parte Heffron, 179 Mo.App. 639, 162 S.W. 652, 656(3).

" . . . The particular circumstances and facts charging the offense are not given, thus the recital that petitioner had been adjudged 'in Contempt of Court' can only be a legal conclusion . . . We find the order of commitment fails to satisfy the statutory and decisional requirements and cannot justify petitioner's punishment and detention."

To the same effect, see Ex parte Neal, 507 S.W.2d 674 (Mo.App.1974), Glenn v. Hendrix, 349 S.W.2d 532 (Mo.App.1961) and White v. Hutton, 240 S.W.2d 193 (Mo.App.1951).

█ Tested by the foregoing requirements and limitations, the warrant of commitment before us is not sufficient. It is nothing more than the legal conclusion of the court that petitioner aided and assisted his wife. It does not state what he did to aid and assist her—simply that he did so. The closest the commitment comes to setting forth a factual statement of what petitioner did is to say that he aided his wife "by active participation" with her to remove and transport the children, which indicates participation by commission rather than by omission, but again there is no specification as to what he did in aiding or participating with her. The warrant of commitment states the end result reached —i. e., that he aided and assisted her. It does not say what were the particular circumstances of his offense.

The verbs "aid" and "assist" both mean to give help or support. If we conclude that a person has aided or assisted another, it means the first person has done something for the other which leads us to that conclusion. Here the warrant of commitment makes no pretense of stating what that something is.

We are aware that there was a judicial hearing on the contempt citation in this matter, at which evidence was heard and the parties represented by counsel, followed by written findings of facts and conclusions of law, but in our judgment this does not make up for the deficiencies in the warrant of commitment. In the Randolph case, supra, the court dealt with the contention that notwithstanding the insufficiency of the commitment, the detention of the petitioner was nonetheless lawful because "the judgment order in the instant case sets out the contemptuous conduct." The court rejected this argument, properly so, saying at 474 S.W.2d 1. c. 39 (footnotes omitted): " . . . We do not reach the question of the sufficiency of that order as an adjudication of contempt. In view of the requirement of Sec. 476.140, V.A.M.S., that the particular circumstances of the contempt be fully stated in the warrant of commitment, the commitment is conclusively presumed to set forth the facts on which the judgment of contempt

is based . . . Since a criminal contempt is a punitive proceeding, criminal in nature (although not a criminal case in the statutory or constitutional sense), whereby the person charged is deprived of his liberty, the judgment and commitment are strictly construed in favor of the accused and no presumptions or intendments will be indulged in order to sustain the conviction . . . So, a commitment for criminal contempt, otherwise void on its face, cannot be validated because the judgment upon which it purports to be based, but which is not made a part of the commitment, is a lawful conviction for such contempt."

Even if the law were otherwise, the findings of fact, conclusions of law and judgment of contempt in the present case do not set forth the particular circumstances on which the judgment of contempt is based. On the contrary, the findings refer to the warrant of commitment for the particulars, saying that the contemptuous acts "will be set forth in detail in the Warrant of Commitment entered contemporaneously herewith" and that "The particular acts of which he is found guilty are set forth in the Warrant of Commitment entered contemporaneously herewith and incorporated by reference". No such particular acts were set forth in the commitment, as we have seen. It cannot, therefore, even with the findings of fact and conclusions of law (which themselves say that the particular acts of which the petitioner is guilty will be found in the warrant of commitment) serve as a lawful basis for petitioner's confinement, under the authorities cited.

The petitioner is ordered discharged from custody and his bail bond and security therefor are discharged. Petitioner's motion to tax the costs of the transcript against respondents is overruled. Ex parte Nelson, 253 Mo. 627, 162 S.W. 167 (1913).

All of the Judges concur.