**Ex parte David W. BROWN.**

**No. 59190.**

Supreme Court of Missouri,
En Banc.

Dec. 8, 1975.

---

David W. Brown, pro se.

Reed O. Gentry, Kansas City, for respondent.

HENLEY, Judge.

This habeas corpus proceeding, filed April 15, 1975, in the court of appeals, Kansas City district, was transferred to this court when the authors of dissenting opinions certified that they deemed the majority opinion to be contrary to prior decisions of this court [1] and the court of appeals.[2] Article V, § 10, Constitution of Missouri.

David W. Brown (petitioner), a member of the bar of Missouri, was on April 14, 1975, found guilty of criminal contempt of the circuit court of Jackson county and sentenced to confinement for 30 days in the custody of the county's department of corrections.

A brief statement of the facts out of which this case arose will help to put it in perspective. Sometime before the day on which petitioner was found in contempt, he was appointed by the circuit court to represent defendant in the case of *State of Missouri v. Phillip H. Richardson* in which the defendant was charged in four counts with

---

1. *Ex parte Shull*, 221 Mo. 623, 121 S.W. 10 (Mo.1909); *Ex parte Stone*, 183 S.W. 1058 (Mo.banc 1916).

2. *Curtis v. Tozer*, 374 S.W.2d 557 (Mo.App. 1964); *Glenn v. Hendrix*, 349 S.W.2d 532 (Mo.App.1961).

the commission of as many felonies. The case was set for trial for April 14, 1975, and petitioner appeared that morning, but, after calling the court's attention to several pending motions and securing rulings thereon petitioner announced he would " * * * have to defer from participating in this trial." Inquiries by the court as to petitioner's reason for this announcement brought answers essentially the same as the announcement. After the court explained to petitioner that he could and would be found in contempt if he refused to participate in the trial after being ordered to do so, petitioner replied that he understood, but " * * * would have to disobey that order." Upon being ordered to participate, petitioner refused. Immediately thereafter the court found petitioner guilty of contempt and directed that an order of commitment issue forthwith.

The court of appeals issued its writ of habeas corpus directed to the officer in charge of the county jail where petitioner was being confined.[3] In his return to the writ, this officer (James Bergfalk, respondent) pleaded, as his authority for confinement of petitioner, the order of commitment issued by the circuit court of Jackson county. Answering the return, petitioner alleged, among other things, that the order of commitment was unlawful and respondent, therefore, without authority to restrain him, because the judgment of contempt, on which the order is based, fails to state the facts and circumstances of the contempt offense as required by Rule 35.-01(a).[4]

The order of commitment is as follows:

"Now on this 14th day of April, 1975, a certain criminal cause wherein one Phillip H. Richardson is defendant came on regularly for trail, [sic] and David W. Brown, attorney of record for defendant appeared in this court at ten thirty o'clock a. m., although this case was set for trial for this date ten days ago, and although the said contemner had been specifically directed by the clerk of this Court at the direction of the undersigned Judge of this Court to be and appear in this Court not later than nine thirty o'clock a. m., on this date for trial of said criminal cause, and in open court said contemner told the judge of this court that he would not appear on behalf of said defendant Richardson at the trial of this cause whereupon this Court advised contemner Brown that he would not be relieved as attorney for defendant Richardson, and that he must proceed to trial in said Richardson case; whereupon contemner Brown told the Court that in spite of the Court's order he, contemner Brown, refused to proceed with the trial of said cause, and openly defied the lawful order of this Court in open court; whereupon this Court found contemner Brown in direct contempt of this Court and ordered that contemner Brown be forthwith confined in the custody of the Jackson County Department of Corrections for a term of thirty (30) days and until released by order of this Court or any other Court of competent jurisdiction."

The judgment of contempt is as follows:

" * * * [T]he Court now finds Mr. David W. Brown of the law firm of Holliday, Holliday & Brown is in direct contempt of this Court; and it is further ordered that Mr. David W. Brown be confined in the custody of the Jackson County Department of Corrections for a period of Thirty (30) days, unless sooner released by lawful order of this Court or any Court having competent jurisdiction."

Rule 35.01(a) provides:

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. *The order of contempt shall recite the facts and shall be*

---

3. Petitioner was released from jail on his own recognizance pending a final decision of this case.

4. References to rules are to Missouri Supreme Court Rules.

*signed by the judge and entered of record.*" (Emphasis supplied.)

Respondent takes the position that it is not necessary to the validity of petitioner's commitment that the facts and circumstances of the contempt be recited in the judgment of contempt; that all that is required is that the order or warrant of commitment set forth the particular circumstances of the offense; that this is all that is required by § 476.140.[5] That section provides:

"Whenever any person shall be committed for any contempt specified in sections 476.010 to 476.310, the particular circumstances of his offense shall be set forth in the order or warrant of commitment."

For reasons hereinafter stated, we need not reach or decide the question of whether the order of commitment complies with § 476.140. However, assuming for the purpose of discussion that it does, petitioner should be remanded to the custody of respondent unless, as petitioner contends, the law requires that the order or judgment of contempt recite the facts and circumstances constituting the offense.

This court and the court of appeals have held consistently since the beginning of this century that in contempt proceedings the facts and circumstances constituting the offense, not mere legal conclusions, must be recited in both the judgment of contempt and the order of commitment.

*Ex parte O'Brien,* 127 Mo. 477, 30 S.W. 158 (1895) involved a contempt proceeding in which the record showed that the court had not entered a judgment of contempt, but had only issued an order of commitment. The court held that there must be both a judgment of contempt and an order of commitment if the confinement of the habeas corpus petitioner is to be upheld. The court said (30 S.W. at 160):

"Contempt of court is 'a specific criminal offense,' and the fine imposed is a judgment in a criminal case. The adjudication is a conviction, and the commitment in consequence thereof is execution. Church, Hab. Corp. (2d Ed.) § 308. See, also, Rap. Contempt, § 155; *Ex parte Kearney,* 7 Wheat. 38. Now, the chief deputy clerk, Fitzgerald, does not show nor intimate by his testimony that any judgment was rendered, or ordered to be entered. He was simply ordered to issue these commitments. And it was competent for him, being the custodian of the records of that court, to testify what entries were made, if any were made. *Durham v. Heaton,* 28 Ill. 264. So that it appears that there has been no adjudication that petitioner and his associates have been guilty of a contempt. If this be true, then the commitment—occupying, as it does, the place of an execution—has no basis on which to rest; for it is the judgment, and not the mittimus, by virtue of which the party committed is detained. *People v. Baker,* 89 N.Y. 460. Unless the record shows a judgment of conviction of contempt, a petitioner may avail himself of the remedy provided by habeas corpus."

In *Ex parte Shull,* 221 Mo. 623, 121 S.W. 10 (1909) the judgment of contempt and the order of commitment were combined in one record entry. The attack by habeas corpus was, of course, on both; and, both were held to be insufficient in that they did not state the facts and circumstances of the contempt. The court said (121 S.W. at 11):

"When the commitment in this case is tested in the crucible of the law, it is found to fall far short of the requirements of the statute. Similar statutes are found in other states. If we look at the recitals of the order leading up to the adjudication of the contempt, there is no effort made to state the particular questions, the refusal to answer which constituted the contempt. We are simply told that the petitioner had treated the court disrespectfully in refusing to answer proper and legal questions propounded to him. It is not even found that said questions were material and pertinent; but, aside from this last consideration, the

---

5. References to sections of the statutes are to RSMo 1969 and V.A.M.S.

statute requires the facts themselves to be stated, not merely the court's conclusion that the questions were legal and proper, and, when we come to the adjudication of the contempt itself, it is not then put upon the ground of the refusal to answer questions; but the finding and the only finding is that petitioner had treated the court disrespectfully. In what manner or how the petitioner treated the court disrespectfully the court did not adjudge and state in its judgment.

"If it should be said it can be inferred by the matter of inducement set out in the record, the answer of all the courts is that, as this is a criminal proceeding by which the citizen is deprived of his liberty, presumptions and intendments will not be indulged in order to sustain a conviction for contempt of court."

In *Ex parte Stone,* 183 S.W. 1058, 1059[3, 4] (Mo.banc 1916) the attack again was upon both the judgment of contempt and the commitment order for failure to state the "particular circumstances" of the offense. Having found the order of commitment insufficient for that reason, the court said: "The order of adjudication of contempt is likewise insufficient, when tested by the same rules." See also: *Ex parte Creasy,* 243 Mo. 679, 148 S.W. 914, 922–23[4] (Mo.banc 1912) for a more detailed discussion of the reasons for the rule that the facts and circumstances of the contempt must be particularized in both the judgment and the execution.

In *Ex parte Fuller,* 50 S.W.2d 654, 657[3] (Mo.banc 1932), the court, citing *Ex parte Creasy,* supra, said: " * * * the facts and circumstances constituting the contempt should be recited in the judgment."

Each district of the court of appeals has held that in contempt proceedings " * * * the facts and circumstances constituting the offense, and not simply legal conclusions, must be recited not only in the judgment * * * but also in the commitment * * *." *Glenn v. Hendrix,* 349 S.W.2d 532, 533[2] (Mo.App.1961 [Springfield]);

*Curtis v. Tozer,* 374 S.W.2d 557, 574[15] (Mo.App.1964 [St. Louis]); *Ex parte Neal,* 507 S.W.2d 674, 679[8] (Mo.App.1974 [Kansas City]).

The requirement of Rule 35.01(a) that the order of contempt shall recite the facts is an expression or codification of the case law developed over the years in the cases referred to, and others.

■ We hold again that in contempt proceedings, whether direct or indirect, the facts and circumstances constituting the offense, not mere legal conclusions, must be recited with particularity in both the judgment of contempt and the order of commitment.

■ The judgment of contempt fails to do so in this case. In this circumstance, it does not matter whether the order of commitment meets this requirement, because " * * * occupying, as it does, the place of an execution—[it] has no basis on which to rest; for it is the judgment, and not the mittimus, by virtue of which the party committed is detained." *Ex parte O'Brien,* supra (30 S.W. at 160).

For the reasons stated, the petitioner must be, and is, discharged.

All concur.